IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

DELAWARE HEALTH CORPORATION, :
a Delaware corporation,
:
            Plaintiff,
:
v.                                                             Case No.
:
MICHAEL O. LEAVITT,
Secretary of the United States                 :
Department of Health and Human Services,
:
            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**COMPLAINT FOR
JUDICIAL REVIEW OF FINAL ADVERSE
AGENCY DECISION ON MEDICARE REIMBURSEMENT**

The Plaintiff, Delaware Health Corporation, doing business as Harbor Healthcare & Rehabilitation Center ("Plaintiff" or "Harbor"), by its undersigned attorneys, hereby sues Michael O. Leavitt, Secretary of the United States Department of Health and Human Services ("Defendant," "DHHS" or "Secretary"). This action arises from the Defendant's decision to recover amounts which Plaintiff was paid under the Medicare Program as a provider of skilled nursing services.

**PARTIES**

1.     Plaintiff is a Delaware corporation that operates a skilled nursing facility at 301 Ocean View Boulevard, Lewes, Delaware 19958. At all times pertinent hereto, Harbor has been a "provider of services" participating in the Medicare Program within the meaning of 42 U.S.C. § 1395x(u).

2. The Defendant Mike Leavitt, Secretary of the United States Department of Health and Human Services, c/o General Counsel of the Department of Health and Human Services, 200 Independence Avenue, S.W., Washington, D.C. 20201, is the federal officer responsible for the administration of the Medicare Program under Title XVIII of the Social Security Act, as amended, 42 U.S.C. § 1395, *et seq*. The Center for Medicaid and Medicare Services ("CMS") is the operating component of DHHS charged with the administration of the Medicare Program.

## JURISDICTION AND VENUE

3. This action arises under the Medicare statute, Title XVIII of the Social Security Act; the Administrative Procedure Act, 5 U.S.C. §§ 706 *et seq*.; and the Declaratory Judgment Act, 28 U.S.C. § 2201. This action is based upon the action of the Secretary denying Harbor reimbursement for a portion of its operating costs incurred in providing skilled nursing services to Medicare beneficiaries.

4. This Court has jurisdiction of this action under 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1331.

5. Venue lies in this judicial district pursuant to 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1391.

## MEDICARE STATUTORY AND REGULATORY FRAMEWORK

6. Title XVIII of the Social Security Act establishes a program of health insurance for the aged and disabled, which is commonly known as the "Medicare Program." 42 U.S.C. §§ 1395-1395ggg. Part A of the Medicare Program

provides for the payment of inpatient services in skilled nursing facilities, among other services. Part B pays for various health services not covered by Part A, including physician services and certain outpatient services.

7. To participate in the Medicare Program, a skilled nursing facility ("SNF") must file a "provider agreement" with the Secretary. 42. U.S.C. § 1395cc.

8. Payment to providers of Medicare services is made through fiscal intermediaries pursuant to contracts with the Secretary. 42. U.S.C. § 1395h. During the two fiscal years at issue in this appeal, the fiscal intermediary for Harbor was Empire Medical Services (the "Intermediary").

9. Fiscal intermediaries determine payment amounts due to Medicare providers under Medicare law and under interpretive guidelines published by CMS. 42 U.S.C. § 1395h, 42 C.F.R. §§ 413.20(b) and 413.24(b).

10. At the end of each fiscal year, an SNF must submit a cost report to the Intermediary showing the costs in incurred during that year and the portion of those costs to be allocated to Medicare for reimbursement. 42 C.F.R. § 413.20. The Intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider, and issues the provider a Notice of Program Reimbursement ("NPR"). 42 C.F.R. § 405.1803.

11. A provider dissatisfied with determination contained in the NPR may file an appeal with the Provider Reimbursement Review Board ("PRRB"). 42 U.S.C. §1395oo(a); 42 C.F.R. § 405.1835.

12. Medicare regulations at 42 C.F.R § 405.1885(a) provide that an Intermediary may reopen a previous determination with respect to findings on matters at issue in a

cost report. Such a reopening must be made within three years of the date of the NPR unless it is established that such determination was procured by fraud on the part of the cost-reporting provider. 42 C.F.R. § 405.1885(d) and (e); CMS Pub. 15-1, Part 1, §2931.1

13. CMS Pub. 15-1, §2932 states the following with respect to notices of reopening of NPR determinations:

> The provider or other party will be advised in the notice as to the circumstances surrounding the reopening, i.e., why it was necessary to take such action, and the opportunity to comment, object or submit evidence in rebuttal.

14. Medicare audit standards, CMS Pub. 13-4, §4112.4(B), provide the following direction to Intermediaries:

> Ensure that the evidence obtained during the course of the audit is sufficient to enable the auditor to support conclusions, adjustments, and recommendations. Make sure that there is enough factual and convincing evidence so that a prudent person can arrive at the same conclusion of fact as the auditor. In addition, evidence must be competent and relevant. That is, evidence must be valid and reliable and have a logical relationship to the issue/subject under review.

15. Medicare rules allow for the use of sampling as evidence in audits. CMS Pub. 13-4, §4112.4(B)(1)(e) provide guidance for planning samples, selecting a sample, and sampling risk. That part of the Manual states in relevant part:

> Sampling is the application of an audit procedure to less than 100 percent of the items within an account balance or class of transactions to evaluate some characteristic of the balance or class. On the basis of facts known to the auditor, decide if all transactions or balances that make up a particular account are reviewed in order to obtain sufficient evidence. In most cases, however, the auditor will test at a level less than 100 percent.

> There are two general sampling approaches, nonstatistical and statistical. Either approach, when properly applied, can provide sufficient evidential date related to the design and size of an audit sample, among other factors. A nonstatistical sample may support acceptance of findings, but findings must be scientifically established to support adjustments.

> Some degree of uncertainty is inherent in applying audit procedures and is referred to as ultimate risk. Ultimate risk includes uncertainties due both to sampling and other factors. Sampling risk arises from the possibility that when a compliance or substantive test is restricted to a sample, the auditor's conclusions may be different had the test been applied in the same way to all items in the account balance or class of transactions.

16. A provider dissatisfied with determinations contained in an NPR may seek administrative review, and, provided the amount in controversy exceeds $10,000, may request a hearing before the PRRB, and the decision of the PRRB

is the final DHHS agency decision, unless the Administrator of CMS alters the PRRB decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875.

17. A provider may obtain judicial review of a final decision of the CMS Administrator by filing a civil action within sixty (60) days of the date on which the notice of the decision was received. *Id.*

## STATEMENT OF FACTS

**Reopening of the Final Cost Settlements**

18. Harbor's cost reports for fiscal years ended ("FYE") 12/31/96 and 12/31/97 were both final settled by the Intermediary on September 28, 1999.

19. In a letter dated August 21, 2002, the Intermediary notified Harbor that it reserved the right to reopen the FYE 1996 and 1997 cost reports when it had completed its review of a Department of Justice ("DOJ") review (incorrectly stated as an "OIG" review) of the possible inflation of therapy costs.

20. In a letter dated March 18, 2003, the Intermediary provided supplemental adjustments reducing the Harbor's reimbursable therapy costs. These adjustments were based upon a DOJ determination that Harbor's therapy contractor, Whitehorse Rehabilitation Services, Inc. ("Whitehorse") had altered its therapy logs at other SNFs, resulting in a fraudulent scheme to have the SNFs, and ultimately Medicare through its cost-related reimbursement system, pay for services not actually rendered.

21. Harbor appealed the determinations contained in the Intermediary's letter of March 18, 2003, resulting ultimately in the instant case.

**Reimbursement Recovery Decision**

22. The determinations appealed were based upon no review of any records pertaining to services at Harbor, but were instead based solely upon a DOJ review of Whitehorse services at other SNFs. The Intermediary demanded repayment of a percentage of Whitehorse's services provided to Harbor residents, based upon a sample derived from another, unrelated, SNF.

23. Subsequently, rather than meeting its burden to establish the existence of fraud at Harbor, the Intermediary offered Harbor the meaningless opportunity to provide documentation demonstrating that there was no fraud at Harbor. Harbor was unable to provide a meaningful response to this opportunity, because it would have been impossible for Harbor to do so. Harbor's records included notations of service provided by Whitehorse, as well as bills from Whitehorse for the provision of these services. If Whitehorse employees fraudulently created those patient records and then billed Harbor for them, Harbor's records would in no way indicate so, one way or the other. The Intermediary's "offer" was therefore no more than a thinly-veiled stratagem to somehow shift the Intermediary's burden to establish that Whitehorse did commit fraud at Harbor. Further, Harbor's records on this subject, as are all of Harbor's records, are open to inspection by the Medicare program and its agents. If there was anything in Harbor's records that the Intermediary wanted to see, it had only to ask for specific records.

24. During discovery in the case before the PRRB, Harbor filed Interrogatories requiring the Intermediary to identify the factual basis for its recovery demands.

        The Intermediary replied that it had no documentary evidence other than a letter from DOJ suggesting a recovery based on sampled findings from an unrelated case.

25. At the PRRB hearing (over objection, due to its manifest lateness and non-responsiveness to the Interrogatories), the Intermediary presented documentary evidence only from the unrelated Whitehorse fraud case, indicating the percentage of allegedly fraudulent billings by Whitehorse at another SNF, and alleging that "someone" (unidentified) had indicated that "the same thing" occurred at all facilities services by Whitehorse.

26. Harbor's expert statistician testified that since no facts from Harbor were utilized to determine the existence or amount of the disallowance, such action could only be justified by utilization of an appropriate "sampling" methodology.

27. Harbor's expert statistician further testified that the Intermediary presented no factual underpinning or analysis such as would be required to justify the sampling methods used in this case, under (a) professional statistician standards, or (b) sampling rules as set forth in CMS guidelines for Medicare Intermediaries.

28. The PRRB found that the "sample" used by the Intermediary to determine overpayments at Harbor was deficient in the following ways:

    a. The practice of using data from another facility is questionable;

    b. The sample only used data from one month during a two-year period;

    c. The sample only used data from one out of four potentially affected SNFs; and

        d. The record provides "very little" information about how the audit analysis was actually conducted.

29. The PRRB concluded that the Intermediary's "offer" to accept evidence from Harbor was no justification for the ultimate disallowance, as:

        a. Harbor was not given any guidance on what documentation it was being asked to submit until December of 2006;

        b. Harbor was not furnished with "any information" concerning the basis for the disallowance until January 9, 2007, the day before the PRRB hearing; and

        c. Harbor was provided no substantive response to its Interrogatories requesting this information.

30. The PRRB held that "[t]he Board finds no evidence in the record to support the sample as a competent and valid basis for determining that the costs claimed by the Provider were not proper."

31. The CMS Administrator, upon review requested by the Intermediary, reversed the finding of the PRRB. Without citing any facts or law, the Administrator articulated the basis for his decision as follows:

> Notably, the standard for proof for criminal fraud is significantly higher than the burden of proof for an APA-guided administrative hearing. Therefore, the factual findings in the criminal matter that this same pattern of fraud occurred at the Provider involving the same criminal defendants need not be readjudicated in this administrative case….

Further, the Administrator finds that this methodology is valid and reasonable under the circumstances of this case.

32. Harbor filed this Complaint within 60 days of the date the Administrator's decision was received. The Administrator's decision constitutes the final decision of the Secretary. 42 U.S.C. § 1395oo(f)(1).

## COUNT ONE

33. The Plaintiff alleges and incorporates by reference the allegations made in paragraphs 1 through 32 of this Complaint, as if set forth in full.

34. The Secretary's decision that the Intermediary's reopening of the FYE 1996 and 1997 cost reports were timely made is arbitrary, capricious, an abuse of discretion, contrary to law, and is unsupported by substantial evidence when the record is reviewed as a whole under section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706, because it relies on the incorrect determination that the Intermediary's letter of August 21, 2002 constituted acceptable "notice of reopening" as is required by Medicare regulations and guidelines.

35. The Secretary's decision that the Intermediary's sampling methodology was "valid and reasonable under the circumstances of this case" is arbitrary, capricious, an abuse of discretion, contrary to law, and is unsupported by substantial evidence when the record is review as a whole under section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706, for at least the following reasons:

    a. There is no evidence in the record to support the Intermediary's finding in this case. The Intermediary based the disallowance in question on no

review of records relating to Harbor, and on no facts relating to Harbor. The disallowance was based entirely upon a sampling of records taken at another, unrelated, nursing facility in the course of a criminal investigation against that other nursing facility, and upon a hearsay statement by an unnamed person to criminal investigators to the effect that Whitehorse followed the same fraudulent practices everywhere they performed services. Moreover, the criminal indictment brought against the therapy provider contained two counts of wire fraud against Whitehorse and did not involve any charges arising out of Whitehorse services at Harbor.

b. In the most favorable light, the Intermediary's "evidence" must be subjected to tests of adequacy for "sampling' methodology, as it was based on no records or facts relating to Harbor. Per Harbor's expert testimony, the sampling fails to meet any acceptable test, whether that of the Medicare Program audit guidelines (CMS Pub. 13-4, §§4112 *et seq.*), or that of professional standards utilized by statisticians. The Intermediary introduced no evidence to justify its sampling methodology as to any Whitehorse fraud at Harbor.

c. The Intermediary produced no evidence before the PRRB to demonstrate the facts relating to Harbor that might have been utilized in determining the sample. Accordingly, the Intermediary's "methodology" could not be justified under Medicare audit standards or professional statistician sampling principles.

d. The Intermediary's "offer" to allow Harbor to produce evidence that none of Whitehorse's services at Harbor were fraudulent was without meaning. Harbor's, records, to which the Intermediary is allowed unfettered access, only demonstrated that Whitehorse documented the provision of services and then billed Harbor for those services. A review of such documentation would in no way reveal whether or not the Whitehorse employees who documented the provision of services were in fact lying.

e. Moreover, as the PRRB noted in its decision in this case, there is no way to know whether the $500,000 that Medicare recovered from Whitehorse in the underlying criminal case was intended to reimburse Medicare for, among other things, services allegedly provided at Harbor. The PRRB was disinclined to allow possible double payment to Medicare based upon a lack of evidence on this subject. The Administrator concluded, based on facts not presented in evidence in the case below, that the restitution directly compensated involved nursing facilities – but that Harbor was not among them. Should this be true, then why is Medicare seeking to recover therapy payments made to Harbor when any provable claims to that effect would have resulted in restitution through the initial criminal case? This is, <u>inter alia</u>, an admission on the part of the Administrator that Medicare has no case to present as to alleged fraud occurring at Harbor.

WHEREFORE, Plaintiff respectfully requests and Order and Judgment in its favor, as follows:

(a) Declaring that the Intermediary's letter of August 21, 2002, did not constitute required timely "notice of reopening";

(b) Declaring improper and illegal the Secretary's overruling of the PRRB decision that the sample used by the Intermediary to determine the disallowance appealed of was improper;

(c) Reversing and setting aside the decision of the Secretary in this case;

(d) Remanding the case to the Secretary with instructions to reverse the recovery requests that are the subject of this case;

(e) Awarding the Plaintiff the costs of this suit incurred by Plaintiff, including reasonable attorneys fees; and

(f) Such other and further relief as the court may deem just and proper under the circumstances.

Date:   December 19, 2007

SMITH, KATZENSTEIN & FURLOW LLP

_____
Robert J. Katzenstein (ID No. 378)
Etta R. Wolfe (ID No. 4164)
800 Delaware Avenue, 10th Floor
P.O. Box 410
Wilmington, DE  19899-0410
Attorneys for Plaintiff
Delaware Health Corporation, doing business as
Harbor Healthcare & Rehabilitation Center

OF COUNSEL:
Barry Bach, Federal Bar No. 01795
Henry E. Schwartz, Federal Bar No. 07739
Hodes, Pessin & Katz, P.A.
Henry E. Schwartz LLC
901 Dulaney Valley Road, Suite 400
Towson, MD 21204
410.938.8800
410.832.5640 (facsimile)

≋JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
DELAWARE HEALTH CORPORATION,
a Delaware corporation,

**DEFENDANTS**
MICHAEL O. LEAVITT, Secretary of the
U.S. Dept. of Health & Human Services

(b) County of Residence of First Listed Plaintiff  **New Castle**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Robert J. Katzenstein (ID No. 378)
Smith, Katzenstein & Furlow LLP

(c) Attorney's (Firm Name, Address, and Telephone Number)
800 Delaware Ave., P.O. Box 410
Wilmington, DE  19899, 302-652-8400

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☒ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. Section 1395oo(f)(1)
Brief description of cause:
Medicare Reimbursement Appeal

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE: 12-19-07
SIGNATURE OF ATTORNEY OF RECORD: *[signature]* Robert J. Katzenstein
(ID No. 378)

**FOR OFFICE USE ONLY**
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 07-829

# ACKNOWLEDGMENT OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ____1____ COPIES OF AO FORM 85.

___12/19/07___  
(Date forms issued)

___David C. Martin___  
(Signature of Party or their Representative)

___David C. Martin___  
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action