## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

DELAWARE HEALTH                    *
CORPORATION,
                                   *

      Plaintiff
                                   *

v.                                           CIV. NO. 07-829-SLR
                                   *

MICHAEL O. LEAVITT,
                                   *

      Defendant
                                   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*


## ANSWERING BRIEF OF PLAINTIFF DELAWARE HEALTH CORPORATION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT


SMITH, KATZENSTEIN & FURLOW LLP
Robert J. Katzenstein (ID No. 378)
800 Delaware Avenue, 10th Floor
P.O. Box 410
Wilmington, DE 19899-0410
302.652.8400
302.652.8405 (facsimile)

Attorneys for Plaintiff
Delaware Health Corporation, doing business as
Harbor Healthcare & Rehabilitation Center

Of Counsel:
Barry Bach
Henry E. Schwartz
Hodes Pessin & Katz, P.A.
Henry E. Schwartz LLC
901 Dulaney Valley Road, Suite 400
Towson, MD 21204
410.938.8800
410.832.5640 (facsimile)

Dated:      July 18, 2008

{07806|BRF|10046727.DOC}

# TABLE OF CONTENTS

Table of Authorities..............................................................................................................ii

I.      Introduction..............................................................................................................1

II.     Argument...................................................................................................................3

III.    Conclusion.................................................................................................................8

# TABLE OF AUTHORITIES

**Cases**

Mitchell v. Johanns, 400 F.Supp.2d 1133 (S.D. Iowa 2005)........................................... 6

**Statutes**

42 C.F.R. 405.1885(a)................................................................................................. 7

42 C.F.R. 405.1885(e)................................................................................................. 7

**Other Authorities**

Intermediary Manual, (13-3), section 3799 .................................................................. 7

PRM section 2931....................................................................................................... 7

I.    **Introduction.**

Plaintiff, Delaware Health Care Corporation, d/b/a Harbor Healthcare & Rehabilitation Center ("Harbor"), hereby addresses the following primary contentions put forth by Defendant ("DHHS") in its Opening Brief (D.I. 17) in Support of its Cross-Motion for Summary Judgment (D.I. 16):

1.    DHHS asserts that it had no obligation to prove that Harbor owed it a recoupment of payments apparently properly made, and that in fact it was Harbor's obligation to affirmatively prove that Whitehorse practiced a particular level or extent of fraud at the Harbor facility.

2.    DHHS asserts that despite having no obligation to prove anything pertaining to the recoupment, DHHS nevertheless did provide legally adequate proof that a particular amount or level of fraud occurred at Harbor. And that such proof was provided by DHHS without the presentation of any witnesses or testimony or evidence.

3.    DHHS asserts that DHHS' own audit standards for its Fiscal Intermediaries do not apply to the audits performed by its Fiscal Intermediaries. And DHHS' elaborate standards for the creation of samples and determining their validity do not apply to the instant case, regardless, because the Fiscal Intermediary was only seeking recoupment based upon another agency's request, and not upon its own initiative or analysis. And that Harbor's rights to contest such an audit are meaningless here because the Intermediary was acting on another agency's analysis, and so that analysis need not be presented and cannot be appealed.

4.     DHHS asserts that any sampling methodology, utilized by DHHS, whether explained or not, is valid, unless Harbor produces an alternative sampling methodology, despite Harbor's lack of access to any facts that would support an alternative methodology.

5.      And DHHS asserts that any DHHS recoupment of funds directly from the therapy

contractor does not actually prevent DHHS from recouping the same funds from Harbor.

6.      Finally, on the limitations issue, DHHS argues that the alleged existence of

"fraud" allows for cost report reopening with no time limit.

II.    **Argument.**

    A.    DHHS asserts that it had no obligation to prove that Harbor owed it a recoupment of payments apparently properly made, and that in fact it was Harbor's obligation to affirmatively prove that Whitehorse practiced a particular level or extent of <u>fraud at the Harbor facility</u>.

Although Harbor's final Medicare payments for Fiscal Years 1996 and 1997 were settled, resolved and closed, DHHS determined that those settlements should be opened and amended. However, rather than believing that the amount of, and rationale for, such amendments should be demonstrated by DHHS, the agency argues that it was Harbor's responsibility to demonstrate the amount and rationale to be applied to such amendments. In fact, it is DHHS' position that it was incumbent upon Harbor to evaluate every one of its physical therapy records for these two years, and make an affirmative determination, and prove, that each of those records was not created by Whitehorse with fraudulent intent. To summarize this argument, DHHS believes that it does not have an obligation to justify its take-back of Medicare payments, and that, on the contrary, the Medicare provider has the obligation to prove that its subcontractor's records were not fraudulent. On this basis, DHHS could take-back every Medicare payment ever made to any Medicare provider, leaving those providers with no basis whatsoever to appeal or disagree with the action.

    B.    DHHS asserts that despite having no obligation to prove anything pertaining to the recoupment, DHHS nevertheless did provide legally adequate proof that a particular amount or level of fraud occurred at Harbor. And that such proof was provided by DHHS without the presentation of any witnesses or testimony or <u>evidence</u>.

DHHS also adopts the position that it, in fact, has affirmatively proven that the 1996 and 1997 revisions to Harbor's reimbursement were subject to adequate proof. This argument is put forward without the DHHS presentation below of any witnesses, and without even the identification of any person who may have made factual allegations relevant to the case.

DHHS bases this argument upon the presentation below of two items: (1) a copy of the indictment issued against Whitehorse, and (2) the reiteration of a vague statement made by an unnamed source. Taken together, DHHS argues, this amounts to "proof" of an identifiable and particular amount of funds that were improperly reimbursed by Medicare.

DHHS is not deterred by the fact that the indictment is only a set of allegations, and does not name Harbor in it. DHHS is not deterred by the fact that the statement that Whitehorse "did the same thing" at all facilities it serviced is made by an unnamed person, not subject to cross-examination. (Nor was the individual who reported this statement presented as a witness below.) DHHS is not deterred by the fact that "did the same thing" is a nearly meaningless characterization without further explication and evaluation. (For example, what if the type of service that Whitehorse exaggerated occurred frequently at one facility, and rarely if ever at Harbor?)

To characterize these two pieces of evidence presented by DHHS as "proof" makes no sense on its face.

C.    DHHS asserts that DHHS' own audit standards for its Fiscal Intermediaries do not apply to the audits performed by its Fiscal Intermediaries. And DHHS' elaborate standards for the creation of samples and determining their validity do not apply to the instant case, regardless, because the Fiscal Intermediary was only seeking recoupment based upon another agency's request, and not upon its own initiative or analysis. And that Harbor's rights to contest such an audit are meaningless here because the Intermediary was acting on another agency's analysis, and so that analysis need not be presented and cannot be appealed.

The CMS Administrator's decision articulated a rejection of DHHS' own audit standards based upon the unsubstantiated notion that when there's fraud, there are no rules. DHHS' counsel have created a new rationale for that conclusion. DHHS' position now is that its own audit standards for its Fiscal Intermediaries do not apply to this audit by its Fiscal Intermediary because the recoupment was not their idea. Since the reopening and recoupment

was recommended by the Department of Justice, DHHS now contends, the Intermediary audit standards do not apply. This position might make sense if DOJ had sought the recovery through court (rather than administrative) proceedings – in which case other standards of proof might have applied. It makes no sense, however, to ask the Fiscal Intermediary to exercise its jurisdiction under the Medicare rules to reopen a cost report, and then to argue that Medicare rules do not apply to the action. It also contradicts DHHS' allowance of an appeal to the PRRB, which by law is only available to appeal Medicare cost report actions. Is this such an action or not? Clearly it is – yet DHHS is now saying that it really is not.

DHHS has created substantive standards for performing audits that result in appealable cost settlement determinations, and now seeks to avoid their application because it is manifestly clear from the record below that those standards were violated in this case.

D.    DHHS asserts that any sampling methodology, utilized by DHHS, whether explained or not, is valid, unless Harbor produces an alternative sampling methodology, despite Harbor's lack of access to any facts that would support an <u>alternative methodology.</u>

DHHS also argues that it has presented a "sampling methodology," and that it is <u>prima</u> <u>facie</u> valid unless Harbor can present an alternative methodology that is superior. First, we must dispense with the notion that DHHS has presented a "sampling methodology." As the testimony of Dr. Schumi clearly indicates, DHHS has not done so. Their determination can surely be termed "random," although it cannot be said that they utilized a "random sample." As is explained in the Opening Brief (D.I. 19) accompanying Plaintiff's Motion for Summary Judgment (D.I. 18), the application of the percentage utilized in an unrelated nursing facility without any review of Harbor's records or analysis of a comparison to Harbor was unjustified by DHHS in the case below.

Second, DHHS asserts that Harbor, with no information whatsoever available to it concerning possible Whitehorse fraudulent records, should have developed its own sampling methodology to determine that some percentage of Harbor's records had been fraudulently created by Whitehorse. It would have worked like this – the government indicates that they think some of your records were fraudulently created by a subcontractor, and that rather than look at any of your records, the government expects you to prove which of your records was not fraudulently created. Again, a perfect scheme for recovering all Medicare payments made to every health care provider in the Medicare program.

E.    And DHHS asserts that any DHHS recoupment of funds directly from the therapy contractor does not actually prevent DHHS from recouping the same funds from <u>Harbor</u>.

This DHHS argument is particularly difficult to defend, as it is impossible to comprehend. The key to this understanding, however, may exist in facts not in the record in this case. Although it was DHHS itself that introduced evidence of the criminal judgment against Whitehorse, DHHS did not introduce any evidence as to whether or not Whitehorse (and any related parties) had at any point in time actually paid the restitution ordered. To muddy the waters, however, DHHS cites <u>Mitchell v. Johanns</u>, 400 F.Supp.2d 1133 (S.D. Iowa 2005) to demonstrate that courts have held that "[t]he order of restitution to <u>other</u> criminals does not obviate the provider's responsibility to return improper reimbursement." (DHHS' Opening Brief at 26 (emphasis added)). Who are these "other criminals" referred to? Is DHHS accusing Harbor of being a criminal?

So is DHHS arguing that there is no problem with it reducing Harbor's reimbursement even though it recovered the amounts related to the alleged fraud from Whitehorse directly? Or is it arguing that it can recover the payments from Harbor because Whitehorse has not made

good on some or all of the court-ordered reimbursement?  The latter "facts," however, true or

not, were not put into the record below, and of course, must be disregarded.

      F.      Finally, on the limitations issue, DHHS argues that the alleged existence of "fraud" allows for cost report reopening with no time limit.

DHHS argues that there are no limitations applicable to this reopening because of

the alleged presence of fraud.  The authorities cited by DHHS do not support this proposition:

      a.      PRM section 2931.1F specifically refers to fraud committed "by

any party to the determination or decision."  This would exclude fraud committed by

Whitehorse, as only DHHS and Harbor were such parties.

      b.      42 C.F.R. 405.1885(e) (section 405.1885 is the regulation upon

which PRM section 2931 is based) refers back to 405.1885(a), which establishes the time

limitations applicable to reopenings, and therefore does not support the DHHS argument.

      c.      Intermediary Manual, (13-3), sections 3799.4 and 3799.10 (copies

attached hereto as Exhibit A) are (i) on their face "deleted" from the Manual, and (ii) applicable

to "claims determinations," not final cost settlements. (A "claims determination" is a "bill," as

opposed to a final cost settlement, which is governed by PRM section 2931, and not by

Intermediary Manual, section 3799.)

In sum, the applicable DHHS laws and guidelines do not allow DHHS to ignore

the limitations set for reopenings, unless the "fraud" alleged is committed by the Medicare

provider whose reimbursement is subject to the cost settlement (only Harbor in this case).

**III.    Conclusion.**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its

Motion for Summary Judgment and deny Defendant's Motion.

Respectfully submitted by:

SMITH, KATZENSTEIN & FURLOW LLP

Robert J. Katzenstein (ID No. 378)
800 Delaware Avenue, 10th Floor
P.O. Box 410
Wilmington, Delaware  19899-0410
302.652.8400
302.652.8405 (facsimile)

Attorneys for Plaintiff
Delaware Health Corporation, doing
business as Harbor Healthcare &
Rehabilitation Center

Of Counsel:
Barry Bach
Henry E. Schwartz
Hodes, Pessin & Katz, P.A.
901 Dulaney Valley Road
Suite 400
Towson, Maryland  21204
410.938.8800
410.832.5640 (facsimile)

Dated: July 18, 2008

# EXHIBIT A

Health Care Reimbursement ⁻ CMS Program Manuals ⁻ Paper Based Manuals ⁻ Medicare Intermediary Manual - CMS Pub 13 ⁻ Medicare Intermediary Manual - CMS Pub 13 Part 3 ⁻ Chapter VIII --PAYMENT PROCEDURES ⁻ Reopening and Revisions ⁻

# MED-MANUAL, CMS-MANUALS, §3799. REOPENING AND REVISION OF CLAIMS DETERMINATIONS AND DECISIONS
**Medicare Intermediary Manual (CMS Pub. 13-3)**

CMS Manual Links - subscribers only

## §3799. REOPENING AND REVISION OF CLAIMS DETERMINATIONS AND DECISIONS

[CCH Note: This section was deleted by Transmittal 1905.]

When a final determination is made on a claim for payment, both the beneficiary and the provider under Part A and the physician or supplier under Part B should be able to rely on that determination. Occasionally, information disclosing an error in the determination comes to light after the time for appeals has passed. To correct these errors, regulations permit reopening of an otherwise final decisions under specific circumstances. A case is open until the last determination becomes final by the losing party's failure to appeal, or appeal rights have been exhausted. Reopen only if the case is closed and the new information is significant and material, or discloses an error on the face of the materials.

A reopening is not an appeal right. It is a discretionary action defined in 42 CFR 405.750(b) and 405.841, not subject to appeal, which you or HOs take with, or without, a request of the claimant, where good cause exists. It is conducted after the case is "closed." It is an action which you take on your own volition when refusal to reopen would either inflate costs to the Government without a commensurate benefit to the claimant, or deprive the claimant of rightful payment. A reopening is rarely necessary for claims. Do not grant one in the absence of additional and relevant information or a clear error. Do not grant one based upon an oral request.

HCFA policy is to reopen only after appeal rights are exhausted, or the time limit for requesting an appeal has expired. Reopen the claim determination without going the appeals route if it was denied for a technical reason rather than because the services were not reasonable or necessary, since you afford no appeal rights for a technical denial. Technical denials include:

● Beneficiary is not entitled to Part A or Part B; and

● Beneficiary is not eligible for benefits.

If the claim is denied for another reason, do not reopen. Deny the request for reopening. For

example, if a claim requiring medical documentation is submitted without documentation, the provider does not make a timely response to the request for documentation, and the claimant is otherwise entitled and eligible, deny the claim for lack of medical information. If the medical information is subsequently submitted, inform the claimant that a written and signed request for the next level of appeal must be submitted for a re-examination.

Once a claimant has filed a request for an ALJ hearing, the FI or carrier no longer has control or jurisdiction over the claim and cannot reopen it. However, if the new information would permit payment of the claim, that fact should be noted in the ALJ file, so that the ALJ may promptly dismiss the request and remand the claim to you for payment.

NON: MMA01 HCFA13+3799 http://health.cch.com/network&JA=LK&fNoSplash=Y&&LKQ=GUID%3A9940bb00-2acf-3ccc-a4ab-424b86bff541&KT=L&fNoLFN=TRUE& MMA01 #7983 [MMA01 ]

© 2008, CCH INCORPORATED. All Rights Reserved.
A WoltersKluwer Company

Find help at http://support.cch.com, call Research Specialists at 800-344-3734, | Back to Top
or call Tech Support at 800-835-0105.

Health Care Reimbursement ⁻ CMS Program Manuals ⁻ Paper Based Manuals ⁻ Medicare Intermediary Manual - CMS Pub 13 ⁻ Medicare Intermediary Manual - CMS

Pub 13 Part 3 ⁻ Chapter VIII --PAYMENT PROCEDURES ⁻ Reopening and Revisions ⁻

# MED-MANUAL, CMS-MANUALS, §3799.4 Conditions Under Which a Determination or Decision May Be Reopened.
## Medicare Intermediary Manual (CMS Pub. 13-3)

CMS Manual Links - subscribers only

## §3799.4 Conditions Under Which a Determination or Decision May Be Reopened.

[CCH Note: This section was deleted by Transmittal 1905.]

Your initial, revised, or reviewed determination or a decision by a HO may be reopened under the following conditions:

● A determination or decision may be reopened for any reason within 12 months after the date of the determination or decision.

● After such 12-month period, but within 4 years after the date of the initial, revised, or reviewed determination, or a decision of a HO, may be reopened for good cause as defined in §3799.8; or

At any time, if:

● Such initial or review determination or decision was procured by fraud or similar fault of the beneficiary or some other person; or

● The decision is unfavorable to the party or parties, in whole or part but only for the purpose of correcting a clerical error or error on the face of the evidence on which the unfavorable determination or decision was based.

NON: MMA01 HCFA13+3799.4 http://health.cch.com/network&JA=LK&fNoSplash=Y&&LKQ=GUID%3A3509f3a6-323d-3ab2-b555-97ca3a1aad74&KT=L&fNoLFN=TRUE& MMA01 #7987
[MMA01 ]

© 2008, CCH INCORPORATED.  All Rights Reserved.     Find help at http://support.cch.com, call Research Specialists at 800-344-3734,  | Back to Top
A WoltersKluwer Company                                                                          or call Tech Support at 800-835-0105.

Health Care Reimbursement ⁻ CMS Program Manuals ⁻ Paper Based Manuals ⁻ Medicare Intermediary Manual - CMS Pub 13 ⁻ Medicare Intermediary Manual - CMS Pub 13 Part 3 ⁻ Chapter VIII --PAYMENT PROCEDURES ⁻ Reopening and Revisions ⁻

# MED-MANUAL, CMS-MANUALS, §3799.10 Unrestricted Reopening.
## Medicare Intermediary Manual (CMS Pub. 13-3)

CMS Manual Links - subscribers only

### §3799.10 Unrestricted Reopening.

[CCH Note: This section was deleted by Transmittal 1905.]

A. Fraud or Similar Fault. --A determination or decision may be reopened at any time if it was procured by fraud or similar fault, regardless of whether criminal prosecution has been or will be instituted. The fraud or similar fault may be that of the beneficiary, provider, physician, or any other person.

"Fraud or Similar Fault" means:

● Deception by a person who knows that the deception may result in unauthorized benefits to someone;

● An act which approximates fraud, i.e., the furnishing of information which the individual knows is incorrect or incomplete, or the deliberate concealment of information, without a judicial finding of fraud;

● A pattern of program abuse by physicians or suppliers resulting from practices that are inconsistent with accepted sound fiscal, business, or medical practice, such as:

--The furnishing of services that are in excess of the individual's needs, or of a quality that does not meet professionally recognized standards of health care; or

--The submittal of incorrect, incomplete or misleading information that results in payment for:

§ Services that were not furnished;

§ Services more expensive than those furnished; or

§ Services that were not furnished under the conditions indicated on the bill.


● The submittal of, or causing the submittal of, bills or requests for payment containing charges for Medicare patients that are substantially in excess of the amounts the physician or supplier customarily charges.


● An act or pattern of program abuse involving collusion between the supplier and the recipient that results in higher costs or charges to the Medicare program; or


● Any act that constitutes fraud under Federal or State law.


B. A Determination that "Fraud or Similar Fault". --Is present depends on the facts in the particular case. For example, a claim may be reopened more than 4 years after payment was approved, if the evidence establishes a pattern of billing by a physician for weekly routine visits to patients in a nursing home for whom, under established standards of good medical practice, not more than one visit a month is medically reasonable and necessary.


NON: MMA01 HCFA13+3799.10 http://health.cch.com/network&JA=LK&fNoSplash=Y&&LKQ=GUID%3A9259550d-856a-36d6-8be5-f9411cfd00e9&KT=L&fNoLFN=TRUE& MMA01 #7993 [MMA01 ]

© 2008, CCH INCORPORATED.  All Rights Reserved.        Find help at http://support.cch.com, call Research Specialists at 800-344-3734,  | Back to Top
A WoltersKluwer Company                                                                      or call Tech Support at 800-835-0105.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of July, 2008, a copy of the Answering Brief of Plaintiff Delaware Health Corporation to Defendant's Cross-Motion for Summary Judgment was served in the manner indicated on the following:

**BY E-FILE**
Lesley Frieder Wolf, Esquire
Assistant United States Attorney
District of Delaware
1007 N. Orange Street
P.O. Box 2046
Wilmington, DE 19899


**BY FIRST CLASS MAIL**
Brett Bierer, Esquire
Mailstop C2-05-23
Office of General Counsel
U.S. Dpt. Of Health and Human Services
7500 Security Boulevard
Baltimore, MD 21244


Robert J. Katzenstein (ID No. 378)